233 So.2d 472

The MOBILE PRESS REGISTER, INC., a Corp.

v.

Helen K. PADGETT, Adm'x., etc.

1 Div. 366.

Supreme Court of Alabama.

March 26, 1970.

Johnston, Johnston & Nettles, Mobile, for appellant.

Edward P. Turner, Jr., Chatom, and Cunningham, Bounds & Byrd, Mobile, for appellee.

COLEMAN, Justice.

Defendant appeals from a judgment for plaintiff in action for personal injury.

Earl Padgett filed a complaint against defendant for injury to his right hand which he sustained on premises owned and controlled by defendant. The complaint contained two counts. On September 22, 1964, the court sustained defendant's demurrer to the complaint.

On October 13, 1964, the instant plaintiff, as administratrix of the estate of Earl Padgett, filed a motion to revive the cause in the name of the instant plaintiff as such administratrix. She alleged that Earl Padgett had died on September 16, 1964. The court granted the motion to revive.

Plaintiff filed an amended complaint. It also contains two counts which, in all

material respects, are substantially identical with the original counts.

Defendant refiled its demurrer, and the court again sustained the demurrer to the complaint.

Subsequently, on plaintiff's application for a rehearing, the court sustained the demurrer to Count One and overruled the demurrer to Count Two.

Defendant assigns for error the action of the court in overruling the demurrer to Count Two which, in pertinent part, recites:

## "COUNT TWO

"Plaintiff claims of the Defendant the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, damages, for that heretofore and on, to-wit, January 16, 1964, the Defendant was the owner of a certain building located at the intersection of Government Street and ~~Jackson~~ Claiborne Street in the City and County of Mobile, Alabama, where the Defendant was engaged in the printing and publication of newspapers for public sale and distribution. Plaintiff avers that at said time and place, the Defendant owned, operated, managed, maintained, and controlled a machine conveyor in said building to distribute bundles of its said newspapers to independent newspaper carriers at the ~~Jackson~~ Claiborne Street entrance to Defendant's said building. Plaintiff avers that at said time and place, the Defendant's said machine conveyor was not equipped with a safety guard, cover, or other protective device and the Defendant knew, or in the exercise of reasonable care, should have known that it was reasonably probable that the operation of said machine conveyor without a safety guard, cover, or other protective device would result in injury to the Plaintiff's intestate and/or other persons lawfully on Defendant's said premises with Defendant's consent and invitation as independent newspaper carriers and for the purpose of picking up newspapers for public sale.

"Plaintiff further avers that at said time and place, while Plaintiff's intestate was on Defendant's premises as an independent newspaper carrier for the purpose of picking up newspapers for public sale, he got his right hand caught in said machine conveyor and was injured and damaged as follows: his right hand was mained and disfigured; he was permanently injured . . . and he was caused to lose time from his employment during said period of time.

"Plaintiff avers that all of the said injuries and damages to Plaintiff's intestate were caused as a direct and proximate result of the negligence of the Defendant in negligently failing to provide or equip its said machine conveyor with a safety guard, cover, or other protective device."

### Assignment 1.

Defendant assigns for error that the court erred in overruling defendant's demurrer to Count Two of the complaint. In argument in brief, defendant does not identify or quote any ground of the demurrer on which defendant relies.

Defendant argues in brief:

"In essence, the Appellee alleged that the proximate cause of the injuries of Appellee's intestate was Appellant's failure to have a safety guard over its machine conveyor. However, we respectfully submit that the facts as alleged in said Count Two clearly indicate that the proximate cause of the injury complained of was the action of Appellee in allowing his right hand to be caught in Appellant's said machine conveyor. Therefore, the question of proximate cause was one of law for the Courts to decide, and the demurrer to Count Two should have been sustained."

Defendant's demurrer contains twelve grounds. Grounds 1, 2, and 3 are that the

complaint and both counts fail to state a cause of action; as to which see Title 7, § 236, Code 1940; Smith v. Flynn, 275 Ala. 392, 400, 155 So.2d 497, ¶ [11]. Grounds 4, 5, and 6 refer to an attempt by plaintiff. to remove a bundle of newspapers from defendant's machine conveyor and are obviously directed against Count One, because Count Two contains no mention of plaintiff's attempting to remove a bundle of newspapers.

Grounds 7 and 8 recite that defendant owed no duty to plaintiff to leave attended during operation defendant's machine conveyor. These grounds are also directed against Count One.

Grounds 9, 10, 11, and 12 appear to be directed against Count Two. Ground 9 is that defendant owed no duty to equip its conveyor with a protective device. Ground 10 is that the allegation, that defendant knew or should have known, that it was reasonably probable that injury would result from lack of a protective device, is merely a conclusion of the pleader. Ground 11 is that, from aught that appears, plaintiff was without right to be near the machine. Ground 12 is that, from aught that appears, plaintiff was a trespasser when he got his hand caught in the machine.

█ On appeal, defendant appears to argue that the allegations of Count Two show that the proximate cause of plaintiff's injury was plaintiff's own act in allowing his hand to be caught in the machine conveyor, and, therefore, the demurrer to the complaint should have been sustained. It is not necessary to decide whether the ground of demurrer now argued by defendant points out a demurrable defect in Count Two because the objection now urged against the sufficiency of Count Two is not stated in the demurrer and, therefore, cannot be considered. Morgan-Hill Paving Co. v. Fonville, 224 Ala. 383, 386, 140 So. 575; Campbell v. Jackson, 257 Ala. 618, 622, 60 So.2d 252; Title 7,

§ 236, Code 1940. Assignment 1 is not sustained.

### Pleas.

After demurrer to Count Two had been overruled, defendant filed pleas of the general issue and contributory negligence. In Plea 5, defendant alleges that plaintiff's intestate was guilty of contributory negligence in that he negligently placed his right hand in or upon the machine conveyor and that such negligence on his part proximately contributed to his injuries, hence plaintiff is not entitled to recover.

The cause was tried on Count Two and defendant's pleas. The jury returned a verdict in favor of plaintiff for $17,500.00 and judgment was rendered accordingly. Defendant's motion for new trial was overruled.

### Assignment 2.

Defendant assigns as error the action of the court in refusing to give to the jury defendant's requested affirmative charge with hypothesis.

█ Where the affirmative charge has been refused to the defendant, the entire evidence must be viewed in its aspect most favorable to the plaintiff, and, where this is done and a reasonable inference may be drawn adverse to the party requesting the charge, such charge is properly refused. Atlantic Coast Line R. Co. v. McMoy, 261 Ala. 66, 72, 73 So.2d 85; Louisville & Nashville R. Co. v. Johns, 267 Ala. 261, 268, 101 So.2d 265, 74 A.L.R. 2d 499.

█ In considering the action of the trial court in refusing an affirmative instruction requested by defendant, we review the evidence in the light most favorable to plaintiff, regardless of any view we may have as to its weight, and we must allow such reasonable inferences as

the jury was free to draw, not inferences which we may think more probable. Dollar v. McKinney, 267 Ala. 627, 631, 103 So.2d 785.

■ The plaintiff must prove the negligence of defendant, and proof of accident and injury alone will not be sufficient to establish negligence. However, it is well settled that the circumstances attending the injury may be sufficient to establish negligence without any direct proof thereof. Chamberlain v. Southern R. Co., 159 Ala. 171, 176, 48 So. 703; Atlantic Coast Line R. Co. v. McMoy, supra.

The evidence is that plaintiff's intestate worked for a Mr. Beckton; intestate's duties were to pick up newspapers at the building of defendant and deliver them to certain towns in the vicinity of Mobile; intestate had been working as a newspaper carrier for three or four months.

On the night when intestate was injured, he had gone with his truck to defendant's premises to pick up and deliver newspapers. At the place for picking up papers, defendant maintains and operates machinery designed to convey bundles of papers from the second floor down a chute and onto two horizontal conveyor belts.

At the mouth of the chute the ends of the belts come into close proximity. We are not certain of the exact distance between the ends of the two belts, but from the photographs in evidence, we understand that the distance is a few inches, perhaps three or four. The belts extend, both in the same straight line, in opposite directions, one north and the other south. The belts are on a sort of platform.

The belts are several feet above the floor. Bundles of newspapers come down the chute. At the mouth of the chute, the bundles come onto the belts which are so arranged as to carry the bundles north or south to several points at which the bundles would move off the belt onto ramps which extend several feet in a westerly direction perpendicular to the direction in which the belts move. Each ramp consists of a row of parallel cylinders or rollers. The rollers are three or four inches apart and form a sort of roller surface effect sloped downward so that bundles of papers coming off one of the belts will roll downward on top of the rollers and onto a truck parked at the lower end of the ramp.

At the time intestate was injured, his truck was not located at the end of any of the ramps, but was parked in front of another truck which was backed up to the end of one of the ramps. It appears that intestate was waiting to load his papers. A witness, Heathcock, testified that after intestate had been injured and taken to the hospital, the witness backed intestate's truck up to the platform and loaded all the papers that went into intestate's truck.

The witness, Heathcock, was paid by defendant and the jury could find that he was defendant's employee. He testified that he operated the platform and machine conveyor. His duties included taking papers to the bus station. While intestate was waiting for his papers, Heathcock left to carry papers to the bus station. Papers were coming down. At the time Heathcock left, both belts were "going north." On that night, there was no protective guard or other safety device over the belts at the place they came together. Near that place there are switches that start and stop the belts.

The witness, Hamrick, testified that he also hauled papers as an independent carrier. He did not see the accident happen. At that time, he was standing by his truck which was "Right down there out from that chute." The first thing he knew was that he heard intestate "holler." The witness took intestate to the doctor immediately.

Hamrick testified that the machine, at times, got jammed up with bundles; that "they," apparently the belts, did not get unjammed by themselves; that at times, while picking up papers, the witness did get up on the loading dock for the purpose

of unjamming the conveyor; that he did not "get up there" and remove bundles that were jammed in between the conveyors when Heathcock was present; that most of the time, Heathcock did that himself; but that, when Heathcock was not there, the witness did it himself. There were no signs that stated "Keep off the platform."

When Hamrick first saw intestate after the injury, intestate was where the two belts come together. His thumb was cut to the bone and the meat was pulled off and his index finger was cut off.

Finkley, another independent carrier, testified that he was in his truck when he heard intestate "holler"; he saw intestate standing about two feet from where the belts came together; Finkley cut off the conveyor; he noticed a round bundle of about ten papers which had been flipping in between the two belts; he saw a little piece of skin up under the papers and a little bit of blood there. Finkley normally looks after the machine when Heathcock is not there; on the night in question, Heathcock had gone to the station and Finkley was loading his papers coming down the chute.

The eleven-year-old son of intestate testified that about every other Friday he accompanied his father to defendant's plant but not on the night of the injury; that papers would come down the chute onto the belt that carried them to where his father usually parked at the end of the belt; that his father would have to stand on the platform to get papers because the rollers would not reach the truck; his father would pick up papers and hand them to his son in the truck.

The son further testified that he had seen other carriers on the loading dock getting their papers; that he had once heard Heathcock ask intestate "to stay there and run the machine"; on another occasion intestate worked on the platform at Heathcock's request while Heathcock was gone; and once, while Heathcock was gone,

intestate climbed up the chute and pushed some papers down at the request of a "man from up at the top."

Heathcock testified that three or four people "had got hurt" on the conveyor prior to intestate's injury.

### A.

Defendant says in brief:

"The evidence clearly established that there was no hidden danger on Appellant's premises which led to the accident complained of. Rather, the machine conveyor was a known and obvious danger, of which Appellee's intestate knew or should have known; and Appellant could properly assume that he would observe and guard against it. Accordingly, the affirmative charge requested by Appellant should have been given, and its refusal was error to reverse."

Defendant further says in the same section of the argument:

"Elsewhere in this brief Appellant points out that speculation and conjecture such as necessary in this case cannot support a verdict. Even so, the evidence failed to disclose any breach of duty by Appellant, and the affirmative charge should have been given."

What appellant is saying is not entirely clear. We take it that it means that the evidence did not prove that defendant had breached any duty by failing to put a guard or protective device over the place where the ends of the two belts came together. In other words, defendant is saying that the evidence does not show that failure to provide such a guard, cover, or protective device constitutes a lack of reasonable care on the part of defendant.

Heathcock testified as follows:

"Q. To refresh your recollection, did you make this statement: The number of people that have gotten hurt on the conveyor before this, I know of one boy that got his foot caught in

**470**

it and about four or five people altogether have been hurt on it. Did you make that statement?

"A. Yes, there are three or four of them that had got hurt on it.

"Q. All right. Now, at the time that Mr. Padgett was hurt on that machine, did it have a safety guard over it where the belts come together?

"A. No."

We have examined the pictures of the conveyor belts which were before the jury.

" 'When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.' Grand Trunk Ry. Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 683, 36 L.Ed. 485; Reaves v. Maybank, 193 Ala. 614, 69 So. 137; Tennessee Mill & Feed Co. v. Giles, 211 Ala. 44, 99 So. 84." Alabama Power Co. v. Irwin, 260 Ala. 673, 676, 72 So.2d 300, 302.

On consideration of all the circumstances as shown by the evidence, we are not persuaded that all reasonable men must draw the conclusion that failure to provide a guard, cover, or other protective device over the place where the belts come close together did not constitute a failure to exercise that duty of reasonable care which defendant owed to plaintiff's intestate. On the issue of whether defendant was negligent, it seems to us that reasonable men might differ, and that the issue was properly submitted to the jury.

If we have misconceived defendant's argument and it is arguing that intestate was guilty of contributory negligence as a matter of law, we do not agree. That issue also was for the jury.

**B.**

Defendant says in brief:

" . . . Appellee has based her claim upon the *assumption* that her intestate somehow got his hand caught in Appellant's machine conveyor located on its loading platform. Since there was absolutely no testimony of any eye-witness who actually saw the accident, it would be mere surmise to say that a 'safety guard, cover, or other protective device' would have prevented his having gotten his hand caught in the machine conveyor, particularly in light of the uncontroverted testimony that one could still put or place his hand into the space between the belts of the machine conveyor even after erection of a safety guard (R. p. 204). Therefore, the verdict of the jury was of necessity based upon speculation and conjecture and should not be allowed to stand. (Citations Omitted)"

Defendant's argument seems to be that the evidence does not show that defendant's failure to provide a safety guard, cover, or other protective device constituted a breach of defendant's duty to plaintiff's intestate because there is no evidence to show that such protective device would have prevented the injury; especially since the evidence showed that a person could insert his hand between the belts even after a guard or wire cover had been placed over the place where the ends of the two belts were in close proximity to each other.

We have already said that the jury could find from the evidence that defendant's failure to provide a guard, cover, or protective device was negligence. Defendant seems to argue here that because no witness, who testified, actually saw intestate place his hand between the belts, a finding that his injury resulted from absence of a protective device must rest on conjecture, surmise, or speculation.

It is true that no witness testified that he actually saw the injury inflicted, but Finkley says he heard intestate cry out; that intestate was then standing two feet from where the belts come close together; that intestate's hand had been injured; that a bundle of papers was flipping between the belts; and that there was skin and blood "there."

The inference from this evidence most reasonably probable is that intestate had reached in to remove the flipping bundle of papers and that, while he was doing so, his hand had been injured leaving the skin and blood that Finkley saw. No speculation or conjecture is necessary to reach this conclusion. It was for the jury to say whether the injury resulted from defendant's negligence in not providing a protective device, or whether intestate was guilty of contributory negligence.

### C.

Appellant says in brief:

"We respectfully submit that the uncontroverted evidence, and certainly the great preponderance of the evidence, clearly established that Appellee's intestate was not an invitee of Appellant at the time and place where his injuries occurred."

The averments of Count Two are that plaintiff's intestate was on defendant's premises for the purpose of picking up newspapers for public sale. So long as intestate was where he had been invited to be and doing what he had been invited to do, he was an invitee and defendant owed to intestate the duty which an owner in charge of premises owes to an invitee.

"The duty of defendant was to use ordinary or reasonable care to keep its premises in a reasonably safe condition. It was not an insurer of the safety of its guests or invitees. The principle of *res ipsa loquitur* does not apply. (Citations Omitted)

"Defendant is required to exercise reasonable care before its invitee comes to his premises to have the premises reasonably free from danger to the invitee when he arrives and to so keep the premises *while the invitee is on the premises where he may be expected or was invited to go.* (Emphasis Supplied) (Citation Omitted)" Kittrell v. Alabama Power Co., 258 Ala. 381, 383, 63 So.2d 363; First National Bank of Mobile v. Ambrose, 270 Ala. 371, 373, 374, 119 So.2d 18.

Defendant contends that, at the time of intestate's injury, he was not at a place where he had been invited to go. There is evidence given by Heathcock to effect that independent carriers were asked to stay off the platform. We have set out above evidence given by intestate's son to effect that, on prior occasions, intestate had been asked by Heathcock to run the machine, and that, on another occasion, intestate had climbed up the chute and pushed papers down at the request of some one on the second floor.

The evidence presented a conflict for determination by the jury as to whether intestate was or was not acting within the scope of defendant's invitation when intestate got onto the platform on the occasion of his injury.

We are of opinion that the court did not err in refusing the affirmative charge requested by defendant.

### Assignment 21.

The court did not err in denying defendant's motion for new trial on the ground that the verdict is not sustained by the great preponderance of the evidence.

### Refused Charges.

Charge 11 is abstract and was refused without error. " 'A charge which

## 472

merely states an abstract proposition of law without instructing the jury its effect upon the issues in the case on the trial may be refused without error.'" Moore v. Cooke, 264 Ala. 97, 102, 84 So.2d 748, 752, ¶ [8].

■ Charge 12 instructs the jury that ". . . . even should you find that plaintiff's intestate was an invitee . . ." the duty owed by defendant was to maintain the premises in a reasonably safe condition, etc. The charge uses the word "find" instead of the words "reasonably satisfied" and is not affirmative in nature. For this reason alone, refusal of Charge 12 was not reversible error. General Finance Corp. v. Bradwell, 279 Ala. 437, 441, 186 So.2d 150, ¶ [5–7].

### *Excessive Verdict.*

■ Defendant assigns as error the overruling of its motion for new trial on the ground that the verdict for $17,500.00 is excessive. We understand that intestate incurred medical expenses amounting to $1,680.35 and stayed in the hospital seven weeks. His thumb was inserted and kept in an abdominal pocket for several weeks. After the injury, he could not do anything with his right hand. We understand that he never worked again. On consideration of this record, we are unable to say that the amount of the verdict is so excessive as to indicate that it is the result of passion, prejudice, corruption, or mistake. We hold that the trial court's refusal to set aside the verdict on the ground of excessiveness should not be interfered with. Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL and BLOODWORTH, JJ., concur.