This is an appeal by A.B. McCullough, plaintiff, from a judgment rendered in favor of Louisville and Nashville Railroad Company, Inc. (L N), defendant. We affirm.
The plaintiff brought this action for damages suffered when his log truck and trailer collided with the defendant's train in the daytime at the intersection of the railroad with U.S. Highway 31 in Butler County. The evidence disclosed the presence at that crossing of flashing light signals with bells, and signs bearing the words "Railroad Crossing." Up the highway in the direction of the plaintiff's approach to the crossing a large cross, containing the letters "RR," was painted on the highway. Still further back the highway bore warning strips, and a round-shaped sign bearing a cross and the letters "RR" stood beside the highway.
In his complaint the plaintiff alleged that:
 At a point on said public highway the defendant operated a railroad train and a crossing. Said crossing was attended by signals to warn motorists of an approaching train.
 On the date mentioned above, the warning signals were not operating due to the negligence of the defendant and as a proximate result of said negligence the defendant's train collided with the plaintiff's motor vehicle. . . .
These allegations were followed by allegations of injury to himself and his motor vehicle, and ad damnum claims of $6,000.00 for property damage and $75,000.00 for personal injuries.
A pre-trial hearing resulted in an order which contained this description of the plaintiff's theory of this case:
 2. It was agreed by all of the parties that the following are all of the issues in controversy in this cause:
 Plaintiff claims damages of the Defendant . . . and as a basis for said claim, alleges that at the time and place mentioned in the complaint, the Defendant operated a railroad train and crossing on U.S. Highway # 31 in Butler County, Alabama, and that said crossing was attended by signals to warn motorists of approaching trains and the Plaintiff alleges that on the date mentioned in the complaint, the warning signals were not operating due to the negligence of the Defendant in maintaining said signals and, that as a proximate result of the *Page 685 
negligence of the Defendant in maintaining said signals, the Defendant's train collided with the Plaintiff's motor vehicle. . . .
The case was tried to a jury which returned a verdict in favor of the defendant. In his appeal the plaintiff has raised several issues:
1. Whether the trial court erred in its charge to the jury on the measure of damages for injury to personal property;
2. Whether the trial court erred in sustaining the defendant's objection to a certain portion of the plaintiff's closing argument;
3. Whether the trial court erred in charging the jury on the "stop, look and listen" rule;
4. Whether it was error for the trial court to refuse the plaintiff's requested written charges on subsequent negligence;
5. Whether the trial court erred in denying the plaintiff's motion for a mistrial made in connection with defense counsel's cross-examination of the plaintiff; and
6. Whether the trial court erred in denying the plaintiff's motion for a new trial on the ground that plaintiff's cross-examination of a witness was unduly curtailed.
 Issue I.
In his oral charge to the jury the trial judge stated:
 Now, I need to give you some of the general rules about damages in this State. The Plaintiff claims compensation in his complaint for his personal property. The measure of damages for injury to personal property is the difference in the reasonable market value of that property immediately before and immediately after the injury, not to exceed the reasonable cost of repair.
Although cost of repair is a factor which might be considered by a jury, it is not the measure of damages for injury to personal property. See Crump v. Geer Bros., Inc., Ala.,336 So.2d 1091 (1976). However, since this erroneous charge concerned the measure of damages, it was harmless because the jury's verdict was in favor of the defendant. Graves v.Wildsmith, 278 Ala. 228, 177 So.2d 448 (1965); Thompson v.Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306
(1963); Rule 61, ARCP; Rule 45, ARAP.
 Issue II.
During closing argument counsel for the plaintiff stated to the jury:
 Now, there is no law, according to the rules of [the] road, if there is not a stop sign out there, you keep going.
To this statement the defendant's counsel objected on the ground that it was an incorrect statement of the law. The trial court sustained that objection, stating "That is not evidence."
It is not made clear to us why this argument should have been allowed. Although the plaintiff contends in brief that he should have been allowed to argue the point because (later) the court charged on the "stop, look and listen" rule, the statement manifestly is one on counsel's view of existing law and not an argument on the facts of the case. Thus the trial judge was well within his discretionary authority to control argument by sustaining this objection. As was stated inHarrison v. State, 78 Ala. 5, at 11 (1884):
 Courts have a discretionary power . . . to require all propositions of mere law to be argued as such to the presiding judge, and not to the jury. The jury are to receive the law from the court, and not from either the counsel, or from textbooks or adjudged cases. This is a part of the police-power, so to speak, of the court, often necessary to prevent confusion and insure the orderly administration of justice in the trial court.
Not infrequently counsel are permitted to argue legal propositions, even to read legal propositions to the jury. However, as stated in City of Anniston v. Oliver, 28 Ala. App. 390,185 So. 187 (1938):
 But such permission is discretionary with the trial judge, and his refusal to permit such reading is not reversible error. The *Page 686 
reason for this is obvious. The duty of the jury is to try the facts and apply such facts to the law as given them in charge by the court. It is the duty of the court to declare the law, and it is the duty of the jury to follow the law as given them in charge by the court. . . .
Perceiving no error in the trial judge's action, we need not address the correctness of the counsel's statement made in argument.
 Issue III.
The trial court charged the jury on the "stop, look and listen" rule:
 The Court charges you that it is the law in Alabama that a person in the process of approaching and attempting to cross a railroad track, with knowledge on his part of the location of the railroad track, is under a duty to stop, look and listen for approaching trains. . . .
The plaintiff contends that this charge contains an erroneous statement of law because it asserts an absolute duty to stop, look and listen at a crossing controlled by an automatic signal device. The plaintiff argues that the law is otherwise, in that a traveler is warranted in giving some degree of reliance upon a signal, and thus to "slow down" in such situations is sufficient.
The charge complained of is taken from APJI 34.12, and is recommended when "there is evidence showing that the person involved knew of the location of the railroad track." See Pocket Parts, APJI — Civil, Aug. 1980, at 258.
One of the defendant's defenses was the contributory negligence of the plaintiff. The plaintiff himself had previous knowledge of the railroad crossing. Our decisions established that a railroad track is itself a warning of danger, Louisville N.R. Co. v. Bailey, 245 Ala. 178, 16 So.2d 167 (1943), and that a person attempting to cross a railroad track on which cars and locomotives are liable to be moving must stop, look in both directions, and listen, before going on the track.Louisville Nashville R.R. Co. v. Williams, 172 Ala. 560,55 So. 218 (1911). This rule, though a correct one, does not place an absolute duty to stop, look and listen upon every traveler before he goes upon the crossing, Williams, supra. See also,Sloss-Sheffield Steel Iron Co. v. Willingham, 240 Ala. 294,199 So. 28 (1940), where it is observed that the traveler is bound to use ordinary care and prudence to discover the approach of trains, there being no hard and fast rule as to what constitutes contributory negligence. The evidence in this case conflicted. The plaintiff's theory was that the automatic signal device was not operating until after the accident. This view was sharply disputed by numerous defense witnesses. The plaintiff himself testified that he slowed his truck to fourteen miles per hour but didn't stop before he got to the track. The circumstances of the collision, the presence of warning signs on the highway, and the disputed evidence of lights flashing, bells ringing, and whistle blowing, made an issue of contributory negligence for the jury. The given charge, therefore, was not an erroneous charge but at most an incomplete one. It is noteworthy that the trial court did not grant the defendant's motion for a directed verdict at the close of the evidence. Had the court intended to enforce an absolute duty to stop under the circumstances of the case, doubtless he would have granted that motion because the plaintiff's own evidence affirmatively disclosed that he did not stop. Instead, however, the court submitted the case to the jury. If the plaintiff believed that the jury was misled by the instruction, which was a proper charge, the plaintiff should have requested an additional or explanatory charge, which was not done. McLemore v. Alabama Power Co., 289 Ala. 643,270 So.2d 657 (1972). Under these circumstances we cannot conclude that the trial court erred in giving the "stop, look and listen" instruction.
 Issue IV.
The plaintiff contends that the trial court erred in refusing to give these requested charges:
[Charge I]
 The Court charges you that if the Flagman on the Defendant's train saw the *Page 687 
Plaintiff's truck proceeding toward the crossing but wanted to make up his mind whether Plaintiff was going to stop, before warning the engineer to stop, brings into the case the question of subsequent negligence as I have defined that term to you, because a truck with a load of logs, or trees, could not stop in the distance required for an unloaded vehicle to stop. This rule of law is based on the old doctrine of "Last Clear Chance," requiring a person to avoid injury to a person in a place of peril.
Charge II For Plaintiff
 The Court charges you that subsequent negligence, as I have defined to you, is contained and included in a count of simple negligence.
Charge I was properly refused because it placed an undue emphasis on one phase of the evidence, Atlantic Coast Line R.Co. v. Glass, 255 Ala. 183, 50 So.2d 749 (1951), and was argumentative. Capital Motor Lines v. Loring, 238 Ala. 260,189 So. 897 (1939).
Charge II was properly refused also, because it merely stated an abstract proposition of law without instructing the jury on its effect upon the issues in the case. Mobile Press Register,Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472 (1970).
 Issue V.
Defendant's counsel engaged in a sifting cross-examination of the plaintiff concerning plaintiff's previous disabilities and periods of hospitalization and treatment. The plaintiff testified that he had not been required to stop work because of any permanent condition, and that except for one period of hospitalization for a lung operation in 1969, he had not been in the hospital or seen a physician within ten years of the accident (which occurred on February 5, 1975). He did not retire, he said, between 1969 and the time of this collision. Then the following occurred:
 Q Well, let me ask you this then, Mr. McCullough. Isn't it true that in 1972 and 1973 that you swore to the Social Security Administration that you were totally disabled and you got qualified for Medicare?
 MR. PRESTWOOD: And, we object to that, if the Court please.
 MR. ALBRITTON: That is certainly admissible Your Honor.
THE COURT: I would overrule that.
Q Isn't that true?
A That what now?
 Q That you swore to the Social Security Administration that you were disabled and you got a Medicare card for the hospital?
 A I don't remember ever swearing to anything. I may have.
 Q In 1973, do you recall being in the hospital in the Mobile Infirmary for hyperthyroidism, emphysema and pulmonary fibrosis and several other things? Do you remember that?
A I remember being in there for thyroid, yes sir.
Q And, that is in 1973, wasn't it?
A I don't know what year.
 Q Well, would you object to my saying it was 1973 or would you disagree?
A If you have it on the record, I wouldn't.
 Q Now, you told us just a minute ago, you swore to this jury, that you had never been in the hospital between '69 and '75, when this wreck happened. That is not true, is it?
A I thought you were referring to a major problem.
 Q Oh, but you were in the hospital for about five days in Mobile in 1973, weren't you?
A I don't know what year it was.
 Q And, when you were down there, you told them that you were retired for disability and you showed them a Medicare card and it was number 423264674A, isn't that true?
A If that is the number, yes, sir.
Q And, you had it in '73? *Page 688 
 A I can't remember the years. I had written to them and asked them for that information, and I don't know how you got it. I couldn't get it.
 Q Maybe I wanted it more than you did, Mr. McCullough.
 THE COURT: Let's don't have any side remarks, Mr. Albritton.
 Anything like that would be disregarded by the jury. . . .
 I tell you what, at this point and time, let's knock off for lunch.
 Ladies and gentlemen of the jury during the noon hour, do not discuss this case among yourselves and do not permit anyone to discuss it with you. And, let's be back in the jury box at one o'clock.
 MR. PRESTWOOD: May it please the Court, before we adjourn, at this time, Your Honor, we would like to make a motion —
 THE COURT: We can put in any objection later, take it up when we come back.
 MR. PRESTWOOD: I am going to move for a mistrial, based on what counsel said, standing, leaning on the jury rail over there, when he finished interrogating the witness.
 THE COURT: And, what statement was that, Mr. Prestwood?
 MR. PRESTWOOD: That maybe he wanted it — Your Honor heard it — worse than Mr. McCullough.
 THE COURT: Ladies and gentlemen of the jury, I think, I excluded that from your consideration. Is there anyone of you that feels that from that comment, that you could not make up a fair and impartial verdict, based on the evidence in view of that comment? Anyone of you think that you could not make a fair verdict. . . .
If not, the motion is overruled.
 MR. PRESTWOOD: And, we except to the ruling of the Court.
While we do not condone counsel's remark to the witness, we must take note that the trial court acted immediately by excluding it from the jurors' consideration, and then polled the jury upon any possible adverse effect it might have had upon their consideration of the evidence. None was shown. Our consideration of his action and of the record persuades us that the trial court's action overruling the motion for a mistrial was not improper. Alonzo v. State ex rel. Booth, 283 Ala. 607,219 So.2d 858 (1969).
 Issue VI.
The plaintiff's final point is that the trial court erred in unduly limiting his cross-examination of an expert witness for the defense. We cannot agree.
The witness, Mr. Moe, testified on direct examination with respect to an inspection of the electrical warning system which was placed by the defendant to control the intersection. During that interrogation Mr. Moe referred to the file of periodic inspection reports located within the signal box. On his cross-examination that subject was also explored:
 Q Now, when you went into the signal box, did you take out the reports that Mr. Carpenter had filed in that box?
A No. I did not.
Q Did you look at them?
A Yes, I did.
Q You didn't bring them with you?
 A No. I looked at them, and I — While they were in the case.
 Q Did you make a report with anybody about your investigation?
 A No. I used it as an input in my own investigation to satisfy myself about the methods that the L N utilized in maintaining that crossing.
Q What period of time did those reports cover?
 A I don't remember specifically, but it was from a substantial period before this crossing — this accident and a substantial period afterwards. Almost, I would say, from probably six months to a year before, at least, up until the present date or the then present date of December. *Page 689 
Q And, you didn't take them out and make photocopies?
A No.
 Q Or make an independent report to anyone in writing about what you found on those?
A No, I did not.
 Q All right. Do you really remember what was on those reports?
 A I remember the significance of the reports, rather than the specific times and dates. A system of that sort requires periodic inspection and maintenance and I wanted to satisfy myself that this had properly been done. The frequency of dates and of reports did, in fact, satisfy me that it had been properly done. And, it was a continuous maintenance record that showed that it was being properly taken care of.
 Q How much are you paid for testifying in this case and making your inspections? What is your fee?
A What is my fee?
Q Yes. What is your fee?
A Twenty-five dollars ($25.00) an hour.
 Q Would you know what it is now, what it was accumulated to, total?
 A No. I don't. I could estimate it, but I don't know what it is. My fee is not that great a concern.
Q Well, I have the right to ask it?
THE COURT: He has answered it. Go ahead.
MR. PRESTWOOD: He volunteered that, Your Honor.
THE COURT: All right.
 Q Did anyone tell you not to bring the Carpenter report in this courtroom?
 A Oh, heaven's no, not at all. There was. . . . Those reports there are basic things that appear in every single case and the results, as indicated on there, were just excellent. They showed —
 Q You are saying that, but you don't have the papers or the documents —
 A I can assure you if I found anything wrong with those —
 Q We don't want any generalizations. I want to know if you had them here before the jury, if you could explain month by month, everything that went wrong with that signal; and that it was properly cared for?
 A Why certainly, any problems that there were, were noted thereon.
The replacement of occasional burned out bulbs —
Q I am not asking you that?
A Everything is on there.
 Q Mr. Moe, I am asking if you had brought them in here and showed them to me and to the court and to the jury, wouldn't it have been simpler to go week by week, month by month to show the performance of that particular signal?
MR. ALBRITTON: Judge, Mr. Prestwood is —
THE COURT: I sustain the objection to that question.
MR. PRESTWOOD: We except.
THE COURT: It is argumentative.
 MR. PRESTWOOD: He had this witness testify for nearly thirty minutes on direct —
THE COURT: You have your exception in the record.
 MR. PRESTWOOD: And, we would like to cross-examine him.
THE COURT: You may cross-examine him.
 MR. PRESTWOOD: All right, sir. And, we intend to continue with our cross-examination.
Following that, the record discloses that the cross-examination continued. The objection to the question, ". . . wouldn't it have been simpler to go week by week . . .?" was well taken and properly sustained on the ground that the question was argumentative. That ruling, however, did not in fact curtail the cross-examination on the contents of the reports in question, or upon other matters, as the record discloses. No abuse of the trial court's discretion in controlling the scope and extent of cross-examination is *Page 690 
shown. Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975).
No reversible error having been shown, the judgment entered below must be, and is, affirmed.
AFFIRMED.
TORBETT, C.J., and MADDOX, JONES and SHORES, JJ., concur.