This appeal is from a judgment rendered on a jury verdict in favor of the plaintiff, Jeff Glenn Schuster,[1] and against defendant South Coast Properties, Inc., d/b/a "Jake's Place" ("South Coast"), in a negligence action. The question presented is whether Schuster presented substantial evidence showing the alleged negligence of South Coast's employee. Schuster has filed a cross-appeal, alleging that Ala. Code 1975, § 6-11-3, which was applied to his award of future damages, is unconstitutional.[2]
Betty Bass was driving her 1979 Toyota station wagon on Interstate Highway I-10 ("I-10") in Mobile County when her left front tire blew out. Bass exited I-10 and, driving on the flat tire, proceeded to Jake's Place, a convenience store operated by South Coast. Although Jake's Place sells gasoline, it does not employ a mechanic and does not do repair work on automobiles. Bass asked Madison Wilson, a college student who was working part-time at Jake's Place, if he could change her tire. He agreed to do so and, using Bass's lug wrench and jack, began to change the tire. He testified that the lug nuts were badly rusted and difficult to loosen, but did not appear to be damaged. Wilson testified also that after he put the spare tire on he tightened the lug nuts in a "star" pattern. He said he then lowered the vehicle and tightened the lug nuts again.
Bass re-entered I-10 at about dusk and, after reaching the Mobile interchange, began traveling north on Interstate Highway I-65 ("I-65"). As Bass was traveling in the left lane, the left front wheel on her station wagon separated from the rotor and became completely detached. Bass's vehicle came to a stop in the left lane of traffic without colliding with, or being struck by, another vehicle. At that time Schuster was also heading north on I-65 in the right lane. He saw Bass's disabled car, pulled his vehicle onto the right shoulder, ran across the lanes of traffic, and began to wave oncoming traffic away from Bass's station wagon.
At approximately the same time, Donna Hare was driving north in the left lane of I-65. She was approximately one car length behind the car in front of her. Suddenly, that car swerved out of the left lane and Hare saw Schuster standing behind Bass's vehicle directly in front of her. Before she could react, Hare struck Schuster and then collided with Bass's station wagon, pushing it into another vehicle. Schuster was badly injured and required hospitalization and extensive medical treatment. Approximately seven months after the accident, Schuster filed a complaint against Hare, alleging negligence and wantonness. He also named South Coast as a defendant, alleging that Wilson, while acting as an agent for South Coast, had negligently changed Bass's tire and that Wilson's alleged negligence was the proximate cause of his injuries.[3]
The trial court denied South Coast's motion for a summary judgment and allowed the case to be tried before a jury. South Coast moved for a directed verdict at the close of Schuster's evidence and again at *Page 217 
the close of all of the evidence. Both of those motions were denied. The jury then returned a verdict in Schuster's favor and solely against South Coast, assessing damages at $1,000,000.[4] That verdict was comprised of $250,000 in past damages and $750,000 in future damages. The trial court, using Ala. Code 1975, § 6-11-3, deducted the attorney fees that were payable to Schuster's lawyers and then ordered that all of Schuster's future damages in excess of $150,000 be paid in periodic payments over the remainder of Schuster's expected life. South Coast's motion for j.n.o.v., new trial, or remittitur was denied; South Coast appeals, arguing that Schuster failed to present substantial evidence of agency, negligence, and proximate cause. In his cross-appeal, Schuster contends that § 6-11-3 is unconstitutional.
Schuster's complaint was filed after June 11, 1987. Therefore, he was required to submit "substantial evidence" in support of each element of his cause of action in order for his claims to go to the jury. Ala. Code 1975, § 12-21-12. South Coast contends that Schuster presented no evidence of a specific act of negligence by its employee, Wilson, and, therefore, contends that the trial court erred by denying its motions for directed verdict or j.n.o.v.
Proof of negligence requires the establishment of a duty and a breach thereof that proximately caused damage to the plaintiff. Thompson v. Lee, 439 So.2d 113, 115 (Ala. 1983). Mere proof that an accident and an injury occurred is generally insufficient to establish negligence. Id.; Mobile PressRegister, Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472 (1970). However, in limited circumstances, a jury will be allowed to infer negligence if the doctrine of res ipsa loquitur is deemed to be applicable. Thompson, supra. In the instant case, the court ruled that res ipsa loquitur did not apply, and that ruling has not been appealed by Schuster. As a result, in order to present his claims to the jury, Schuster was required to present substantial evidence of a specific act of negligence by Wilson. Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231
(1950).
After Schuster filed his complaint, South Coast attempted to examine Bass's station wagon, which had been stored at a repair shop since the accident. However, it discovered that the vehicle had been vandalized and that the entire left front wheel assembly, including the rotor, lug studs, wheel, and tire, were missing. They were never recovered and, obviously, could not be examined by an expert or submitted as evidence. However, a number of lay witnesses testified that they had "looked at" various parts of the wheel assembly at the accident scene and that those parts did not appear to be damaged.
South Coast argues that without some physical evidence regarding the wheel assembly, any finding that Wilson was negligent in reattaching the wheel is based on speculation. It argues that the wheel separation might have been caused by one of a number of structural defects in the wheel assembly, including a failure of the lug nuts, or stripped threads on the lug studs or lug nuts. It directs this Court's attention toMiller v. Degussa Corp., 549 So.2d 454 (Ala. 1989), as support for its contention that in cases where the failure of a mechanical device is involved and res ipsa loquitur does not apply, it is extremely difficult to produce substantial evidence of negligence when the mechanical device is not available or is not presented as evidence. It contends that without that type of physical evidence, or evidence of a specific act of negligence by Wilson, any finding of negligence on his part would necessarily be based on mere conjecture.
Schuster does not point to evidence of a specific act of negligence by Wilson, and in fact concedes that no one saw Wilson act negligently. However, he argues that, in light of the lay witness testimony that various parts of the wheel assembly appeared to be undamaged after the accident, along with the facts that Wilson changed Bass's tire, that no one else touched it before the accident, and that it *Page 218 
separated from the vehicle 10 to 15 minutes later, "the only logical and reasonable explanation as to why the wheel fell off [Bass's] car is that Wilson failed to properly tighten the lug nuts [while] changing the . . . tire." We do not agree. The theory advanced by Schuster on appeal is, in essence, a variation of the doctrine of res ipsa loquitur.
Schuster contends that a case decided by the Supreme Court of Nebraska, Petracek v. Haas O.K. Rubber Welders, Inc.,176 Neb. 438, 126 N.W.2d 466 (1964), is "remarkably similar" to the instant case. However, in Petracek the plaintiff submitted a number of pieces of evidence that indicated that the defendant had failed to adequately tighten the lug nuts when installing a new tire on the plaintiff's car. That evidence included evidence that the holes in the wheel through which the lug studs passed had become enlarged as the result of friction with the lug studs, and pieces of metal found in the hubcap that were consistent with the "action which caused the enlargement of the holes." An expert witness testified that that evidence indicated a negligent reattachment of the lug nuts. Petracek,176 Neb. at 442-43, 126 N.W.2d at 468-69. Citing that evidence, the court affirmed a judgment for the plaintiff.
Unlike the plaintiff in Petracek, Schuster produced no physical evidence that tended to show that Wilson negligently changed Bass's tire. No expert testimony was submitted to the jury regarding the cause of the wheel separation,[5] and no testimony was given regarding specific acts of negligence by Wilson. In addition, the only testimony regarding the condition of the wheel assembly indicated that the parts observed by the witnesses after the accident appeared to be undamaged. As a result, in order to find South Coast liable the jury was required to infer from the circumstances of the accident that the cause of the wheel separation was something other than a mechanical or structural failure. It was then required to go one step further and infer that an unidentified negligent act by Wilson was the most likely cause. Such a conclusion could have been based only on conjecture or speculation and cannot serve as a proper basis for a jury verdict. Matthews v.Mountain Lodge Apartments, Inc., 388 So.2d 935 (Ala. 1980).
A point not argued in the parties' briefs was brought out during the oral argument of this appeal. During his deposition, Wilson was asked by Schuster's lawyers to describe, step by step, the process he used to change Bass's tire. Although the portion of the deposition containing that description is not in the record,[6] its substance can be found by reviewing Wilson's testimony at trial. Schuster argues that Wilson's deposition testimony created a question regarding whether Wilson properly tightened the lug nuts with a lug wrench while it was on the jack, or merely tightened the nuts "finger-tight." South Coast contends that Schuster's argument is viable only when a portion of Wilson's deposition testimony is read out of context. It argues that a review of Wilson's entire description of the process used to change Bass's tire reveals that, during his deposition, he initially left out the fact that he did use a lug wrench to tighten the nuts while the car was raised on the jack, but quickly corrected his description. The following excerpts from the direct and cross-examinations of Wilson reveal the source of this confusion:
 "[Schuster's lawyer] Okay. And that at that time, after you had taken the wheel off, you got their spare tire and you put it on the left front; is that correct?
"[Wilson] That's correct.
 "Q. Okay. And then you put the lugs back on; is that your testimony?
"A. Yes. *Page 219 
 "Q. And I believe that you have told us that you put them on in like a spiral-type fashion?
"A. Star pattern.
"Q. Crossways, right?
"A. Yes, sir.
 "Q. I believe you told us that you put them on finger tight?
"A. That's correct.
 "Q. The next thing you told us you said you did was that you let the car down off the jack and then tightened up the lugs?
 "A. Yes, sir, I said that. However, when we were going back through it, right after this point, I did mention that I had taken a lug nut — the lug wrench and tightened up the lug nuts as tight as they would go without jeopardizing the car on the jack.
". . . .
 "[Schuster's lawyer] Okay. Let me get up there with you so you can read this.
"[Wilson] All right.
 "Q. Okay. Now, Mr. Breedlove asked you the question after: 'Then you had the tire off, the flat tire, what did you do then with the spare?' And your answer was: 'At that time I put the spare on.' That's number 1. 'And then I put the lug nuts back on.' That's what you told us, right?
"A. That's correct.
 "Q. And you explained how you did that. You said: 'I went in a star-type pattern.' Okay. And then you explained: 'I alternated from, say, the top right, the bottom left, and then up and over to make sure I got all the lug nuts.'
"A. That's correct.
 "Q. 'And I tightened them finger tight.' That's what you said, right?
"A. That's what I said.
". . . .
 "[Schuster's lawyer] Okay. Now, talking about this stuff, you said you have been changing tires for a while now. Later on in your deposition you told us something different about the way you change your tires, right?
 "[Wilson] I mentioned when Mr. Breedlove was going back through the steps with me I had realized that I had left out that step because I was just going on trying to recall at the time I was speaking everything I did, and I did leave out that step. At that time, when he was going back through it with me, I did mention, I said, I then took — this is before letting down the car — I did take the lug wrench and tighten up the lugs as tight as they would go without jeopardizing the car on the jack.
 "Q. You said you left out a step. Now, I want to make sure we get this right, what you said. What part are you talking about?
 "A. Okay. In between [steps] 3 and 4 I took the lug wrench and I put it on the lugs and I tightened it up as tight as it would go without jeopardizing the car coming off the jack because it was still in the air. Then I let down the car, then I retightened them."
 Wilson was later questioned by South Coast's lawyer:
 "[South Coast's lawyer] Now, there has been some discussion about the procedure you followed. Tell the jury what the first thing was that you did when you changed that tire?
 "[Wilson] Well, the first thing, I would have to go to the back and get the tire out and the jack.
". . . .
 "[South Coast's lawyer] All right. What did you do next.
 "[Wilson] Well, then I proceeded to break the lugs and it —
"Q. Tell the jury what you mean 'break the lugs.'
"A. Loosen the lug nuts.
"Q. Was that easy or difficult to do?
 "A. It was difficult because the lug nuts were rusted onto the studs that they screwed on.
"Q. What did you do next?
 "A. Well, after I had them loosened to a certain degree, I went ahead and I jacked up the car.
"Q. Okay. Whose jack did you use?
"A. I used their jack.
". . . . *Page 220 
 "[South Coast's lawyer] Okay. Now, in your deposition — I want to make sure this is clear. This procedure that you described, these steps here, in your deposition it's actually covered in about a page, isn't it?
"[Wilson] That's correct.
 "Q. You weren't asked to go through all these procedures and then an hour later you went back through them again and you added something as an afterthought, later on?
"A. No, sir.
 "Q. All right. Let's read — since this has been read, let's read the entire transcript of your testimony and read along with me and tell me if I read something wrong.
"A. All right.
 "Q. Mr. Breedlove asked you a question: 'After, then you had the tire off, the flat tire, what did you do then with the spare?' And your answer was: 'At that time I had put the spare on and I put the lug nuts back on, I went in a star-type pattern, I alternated from, say, the top right to the bottom left and then up and over to make sure I got all the lug nuts, and I tightened them finger tight, then I took the car off the jack and I tightened the lug nuts.' And then there is an interruption — you can see there is a dash, dash, that you were interrupted there. And the question is: 'Okay — ' by Mr. Breedlove — and you start your answer again, dash, dash: ' — in the same pattern.' And Mr. Breedlove asked you another question again: 'All right. Let me back up. You did it in a star pattern, put the tire on by hand, then put the lug nuts on by hand, for example, the upper left, I think you indicated first, then the bottom right by hand, then the bottom left, and then the top right, or whichever?' Question mark. Then your answer again: 'Then after that, I took the lug wrench and I put them as tight as they would go without jeopardizing the car coming off the jack.' Did I read that correctly?
"A. Correct.
 "Q. So through this procedure you did not leave out any steps, did you?
"A. No, not after we went back over it.
"Q. That was within a matter of seconds?
"A. Yes, sir.
". . . .
 "[South Coast's lawyer] All right. So you tightened them one more time when it was on the ground.
 "[Wilson] Well, when the car was in the air and I had taken a lug wrench and tightened them then, that would not have been sufficient. I did not have enough leverage when the car was on the jack to tighten them up as tight as they needed to be, so I had to let down the car off the jack and then finish tightening it."
(Emphasis added.)
Our review of Wilson's testimony does not support the argument put forth by Schuster. Although the relevant portion of Wilson's deposition is not before this Court, his testimony at trial clearly supports South Coast's argument that Wilson only momentarily left out the fact that he tightened the lug nuts with a lug wrench while the car was raised on the jack. That inadvertent omission was quickly corrected. Such a mistake, standing along, does not provide substantial evidence of Wilson's alleged negligence.
Because Schuster failed to produce substantial evidence of a specific act of negligence by Wilson, the trial court erred by denying South Coast's motions for directed verdict. The judgment in favor of Schuster must, therefore, be reversed, and a judgment rendered in favor of South Coast. Our disposition of South Coast's appeal renders Schuster's cross-appeal moot.
89-853 — REVERSED AND JUDGMENT RENDERED.
89-902 — DISMISSED AS MOOT.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur. *Page 221 
 ON APPLICATION FOR REHEARING
ALMON, Justice.
OPINION MODIFIED; APPLICATION FOR REHEARING OVERRULED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Schuster's wife joined his complaint, making a loss-of-consortium claim. Because the wife's claim is derivative, we shall refer throughout this opinion only to Jeff Glenn Schuster.
[2] South Coast filed a motion to dismiss the cross-appeal. That motion was denied by this Court by an order dated December 11, 1990.
[3] Schuster's complaint named other defendants and, with his wife as co-plaintiff, asserted other theories of recovery. However, those defendants and theories are not relevant to the issues raised in this appeal.
[4] The jury found Hare not liable, apparently accepting her argument that she was faced with a "sudden emergency." The ruling in favor of Hare has not been appealed.
[5] Schuster produced testimony of an expert at the summary judgment stage. He chose, however, not to present that same expert to testify for the jury's consideration.
[6] Thirteen pages of Wilson's deposition, pp. 26-38, are not contained with the remainder of the deposition. Our search of the 1235-page record has not revealed them.